## THE "ATLAS."

1. Owners of a ship are not liable, under existing laws, for any loss, damage, or injury by a collision, occasioned without their privity or knowledge, beyond the amount of their interest in such ship and her cargo at the time the collision occurred.

2. The true measure of compensation to an innocent party, in a case of collision, is damages to the full amount of loss actually suffered by him.

3. The shipper or consignee of the cargo of a vessel, being innocent of all wrong, bears no proportion of the loss resulting from a collision. He may pursue his remedy at common law; or in admiralty, by a proceeding *in rem,* or

by libel *in personam* against the owner of either or both of the offending vessels.

4. A collision between two vessels, which were at fault, resulted in the loss of the cargo of a third vessel which was not at fault. Its owner proceeded *in rem* against one of the offending vessels. *Held*, that he was entitled to a decree against it for the entire amount of his damages.

CROSS-APPEALS from the Circuit Court of the United States for the Eastern District of New York.

This is a libel against the steamboat "Atlas," by the Phœnix Insurance Company; for damages resulting from a collision between the "Atlas" and the steam-tug "Kate," whereby a canal-boat, in tow of the latter, was sunk, and her cargo, of which the company was the insurer, was lost and destroyed.

The District Court found that the collision was caused by the mutual fault of the "Atlas" and "Kate," and decreed that the libellant recover against the "Atlas" one-half of the damages sustained.

Both parties appealed; and, the Circuit Court having affirmed the decree, they appealed here, and filed a written stipulation as follows: —

"1. The appeal taken by the claimants to this court from the decree of the United States Circuit Court for the Southern District of New York is waived, so as to bring up before the court, on the argument of this cause on the cross-appeals, only the question of law as to whether libellants are entitled to recover the whole amount of the damages, instead of one-half.

"2. The parties agree that the collision mentioned in the libel and proceedings in this cause occurred by the mutual fault of the steamboats 'Atlas' and 'Kate.'

"3. The libellants waive and abandon the assignment of error, and the claim that the decree of the Circuit Court should be reversed, on the ground that the 'Atlas' only was in fault; and rely only on the assignment of error, that the decree should have been for the whole amount of the damages sustained by them, instead of for only a moiety thereof; and the only question to be submitted to the court is the question of law, whether the 'Atlas' is liable for the whole amount of libellants' damages."

*Mr. W. R. Beebe* for the claimants.

The libellant having failed to make the "Kate" a party,

cannot hold the " Atlas " responsible for more than one-half of the damages.

The libellant, however, stands in no better position than the " Kate " herself. It is a *rem* liability, and not a personal claim or right.

Had it been decided that the canal-boat which held the cargo was in fault, and contributed to the collision, then the decisions are numerous both in the admiralty courts of England and in this country as to the limit of the liability of the " Atlas."

The reason is obvious; the owners of the cargo choose their boat, and repose confidence in the officers and crew that the enterprise will be properly conducted. This is especially true when the latter must rely upon other motive power for locomotion.

This reliance upon other motive power falls as much within the scope of the employment of the canal-boat, by the owner of the cargo, as would her navigation by sails, if she had them, or steam, if that was her propelling power. To hold otherwise would seem to involve the question within the character of his employment, and the necessities of his vessel, of the master of the canal-boat to employ motive power.

This employment would make the motive power as much the agent of the shipper as the canal-boat and its crew would be.

It is hard to see where the distinction exists, if there is any.

If these positions are correct, then, clearly, the cargo holds no better position to the collision than does the " Kate." *Hay* v. *La Neve*, 2 Shaw's Appeal Cases, 395; *The Bonita, The Alfred, The Jose Maria*, all cited in *The Milan*, 1 Lush. 388; *The Hasbrouck*, 5 Ben. 244.

The power and jurisdiction of the admiralty are peculiar, and a court of common law does not possess them.

At common law, contributory negligence defeats the right of recovery. In admiralty it only calls upon the court to apportion the damages between the faulty vessels.

This necessity involves the power to declare what vessels are in fault, where the fault lies, and to apportion the damages.

This duty is just as incumbent upon the court when there is contributory negligence as it is to decide the case at all.

It follows, as an equal necessity, that whether all the vessels are before the court or not, the power and duty of the court are equally imperative to declare where the fault lies, and apportion the damages.

From these positions it follows that each vessel, whether before the court or not, is equally bound to bear its share or portion of damages. The libellant cannot shield himself from the consequences of making the " Atlas " the sole party, by claiming that any vessel before the court may, under certain circumstances, be liable for more than that share or portion.

The power of apportionment is peculiar. It is *sui generis* in the admiralty courts, and has no recognition in the courts of common law. We submit that its fair intent and the principles involved in it make a several and not joint liability; were not this so, the whole doctrine must necessarily fall to the ground.

The power to apportion necessarily involves that of determining the extent of the liability of each. The court is not bound to apportion equally. It has the power to determine not only who are in fault, but the extent of such fault, and the amount which each must contribute.

The acts of Congress have limited the liability of the owner to the value of his vessel. When the court has fixed the extent of his contributory guilt, it would be a harsh rule, that, because his vessel happens to be of greater value than that of his co-trespasser, he must also pay for the wrongs of the latter. This would virtually abolish the law of apportionment, and bring into full force the common-law doctrine.

The establishment of the law, that the court can only deal with the vessel actually seized, and hold it solely liable for the whole damages, upon the idea of all being joint trespassers, would leave the victim entirely in the hands of the libellant; and, if there were really ten offending vessels, it might perhaps be that one least in fault is chosen because it happens to be the most valuable, or is proceeded against from even more selfish motives.

This would defeat the whole object and purpose of the law of apportionment.

*Mr. William Allen Butler* for the libellants.

The court below erred in limiting the recovery of libellants to one-half the value of the cargo destroyed by the collision. Under the circumstances, they were entitled to recover their entire loss from either of the two vessels which were adjudged to be mutually in fault in causing it.

The owners of the cargo of the canal-boat in tow of the " Kate " were innocent parties, and in no way responsible for the collision. They had no control over the movements of either of the steam-tugs, nor were the master and crew of either of those vessels their agents or servants. The cargo stood in the same relation to the two steam-tugs, by whose concurring negligence it was destroyed, as that of a passenger lawfully on the canal-boat or on either of the steam-tugs at the time of the disaster, who, without fault of his own, sustained personal injuries by the collision. *The Milan*, 1 Lush. 388; *The Alabama and The Game-cock*, 92 U. S. 695.

Upon the facts of this case, the owners of the cargo could at common law have proceeded against the owners of either offending vessel, and recovered the whole amount of their damages. An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all. *Guille* v. *Swan*, 19 Johns. 381; *Chapman* v. *New Haven R. R. Co.*, 19 N. Y. 341; *Webster* v. *Hudson River R. R. Co.*, 38 id. 260; *Arctic Ins. Co.* v. *Austin*, 10 N. Y. Sup. Ct. (2 Hun) 195; *Colegrove* v. *N. Y. & N. H. R. R. Co.*, & *Harlem R. R. Co.*, 20 N. Y. 292.

The same rule prevails in admiralty. *The New Philadelphia*, 1 Black, 62.

The common law creates a joint and several liability, not because the injury is the result of a joint act implying a common design or intent to produce the injury, but because by a single and forcible act, which would not have happened except by the concurring negligence of two parties, an injury has been done to an innocent party.

That rule must also obtain in the courts of admiralty. This is matter of right, in respect to which the rule of admiralty apportioning damages equally between the parties mutually at fault does not apply. That rule is one of limitation and

distribution of damage among and between wrong-doers, as respects themselves. It is one, and hardly one, of equity, because it imposes an equal contribution on the ships in fault, without regard to their relative value or to the degree of blame imputable to either. It is properly styled by Chancellor Kent, following Cleirac, a *rusticum judicium*, by which an arbitrary rule is applied as the best method of disposing of cases in which the precise measure of fault is either inscrutable or not ascertainable with accuracy. 3 Kent's Com., p. 313 (11th ed.). See *Hay* v. *Le Neve*, 2 Shaw's Scotch Appeals, 395.

It certainly has no proper application to the case of an innocent sufferer. Justice requires that his wrong shall be redressed without reference to an adjustment of the relative degrees of blame or responsibility of the wrong-doers as between themselves, or to their ultimate liability to each other for contribution.

*The Milan*, 1 Lush. 388, — the only reported case in which it has been attempted to impose the admiralty rule of equal apportionment, as between wrong-doers, upon an innocent party, by limiting his recovery in a suit against one of two offending vessels to a moiety of the damage done by both, — has been disapproved by this court. *The Alabama and The Game-cock, supra; The D. S. Gregory*, 9 Wall. 513.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Owners of ships and vessels are not liable, under existing laws, for any loss, damage, or injury by collision, if occasioned without their privity or knowledge, beyond the amount of their interest in such ship or vessel and her freight pending at the time the collision occurred.

Subject to that provision in the act of Congress, the damages which the owner of the injured vessel is entitled to recover are estimated in the same manner as in suits for injuries to other personal property, and the claim for compensation may, in certain cases, extend to the loss of freight, necessary expenses in making repairs, and unavoidable detention.

*Restitutio in integrum* is the leading maxim in such cases; and where repairs are practicable, the rule followed by the admiralty courts in such a case is, that the damages assessed

against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the injury was inflicted. *The Clyde*, Swabey, 24; *The Gazelle*, 2 W. Rob. 280; *The Baltimore*, 8 Wall. 385; Williams & Bruce, Prac. 77; 1 Pars on Ship. 538; *The Pactolus*, Swabey, 174.

Sufficient appears in the record to show that the libellants became the insurers of the cargo of the canal-boat named in the libel, consisting of linseed, in the sum of $14,500, for a voyage from the port of New York to the port of New Brunswick, in the State of New Jersey; that the canal-boat, with her cargo on board, was taken in tow at the port of departure by the steam-tug called the "Kate;" that the steam-tug, with her tow, including the canal-boat and two other vessels, proceeded in safety to New Brighton, where the whole flotilla remained until the next morning, when they started for the port of destination, the steam-tug heading north-west by north, and taking her course across the kills directly for Port Johnson, on the Jersey shore; that the steam-tug with the canal-boat and the two other vessels in tow kept that course until she was within one hundred and fifty yards of the shore, when the master, being then in the pilot-house, heard the whistle of a steamboat about one-tenth of a mile distant; that it was a single blast, being the signal that the respective boats as they approached should pass to port; that the master of the steam-tug having the canal-boat in tow answered the signal by blowing his whistle twice, which is the proper signal that the boats should pass to starboard, it being unsafe for him, owing to the state of the tide and the conformation of the adjacent shore, to attempt to pass the approaching vessel on the port side; that the signal given was the proper one; and the charge is, that the master of the steam tug immediately starboarded his helm, and that the approaching vessel, which proved to be the steam-tug the "Atlas," within a minute ran into the steam-tug having the canal-boat in tow, with great force and violence, staving her in from her plank-shear to the third plank below her water line, which caused the steam-tug and canal-boat she had in tow to sink, whereby the cargo of the canal-boat became a total loss; and the libellants also charge, that the loss was wholly occasioned through the fault, negligence, and want of skill of

those in charge of the approaching steam-tug.  *The Friends,*
4 Moore, P. C. C. 319.

Process was served, and the claimants appeared and filed an
answer, setting up the several defences alleged in the record.
Testimony was taken on both sides, and, the parties having
been fully heard, the District Court entered an interlocutory
decree that the damages claimed by the libellant were caused
by the mutual fault of the steam-tug " Kate " and the steam-
boat " Atlas," and that the libellants do recover against the
steamboat " Atlas " one-half of the damages by them sustained
by reason of the collision, and that the cause be referred to a
commissioner to ascertain the amount.

Pursuant to the decretal order, the commissioner reported that
the whole amount of the damages to the date of the report was
$13,617.02, and that the libellants were entitled to recover one-
half of that sum ; to wit, $6,808.51. Exceptions were filed by
the libellants to that report, upon the ground that they are
entitled to the entire amount of the damages sustained; but the
court overruled the exception, confirmed the report, and entered
a final decree in conformity with the report.  Both parties
appealed to the Circuit Court, where the parties having been
again fully heard, the Circuit Court entered a final decree
affirming the decree of the District Court, and both parties
appealed to this court.

Since the appeal was entered here, the parties have been
fully heard, and they have filed in the cause a written stipula-
tion, to the effect following : 1. That the claimants insist only
that the decree of the Circuit Court should be affirmed, the
parties agreeing that the collision occurred through the mutual
fault of the steamboats " Atlas " and " Kate."  2. That the
libellants admit that both the steamboats were in fault, but
insist that they are entitled to recover for their full loss, and
that the decree, being for a moiety only, should be reversed on
that account, and that a decree should be entered for the entire
damages that the owners of the cargo of the canal-boat sustained
by the collision.

Other questions involved in the record being waived; the
court will confine its attention to the single inquiry, whether
the ruling of the court below in overruling the exception of

the libellants to the report of the commissioner is or is not correct.

Satisfaction to the libellant for the injury sustained is the true rule of damages in a cause of collision, by which is meant that the measure of compensation shall be equal to the amount of injury received, and that the same shall be calculated for the actual loss occasioned by the collision, upon the principle that the sufferer is entitled to complete indemnification for his loss, without any deduction for new materials used in making repairs, as is prescribed in the law of marine insurance.  Complete recompense for the injury is required; nor is the guilty party in such a case entitled to deduct from the amount of the damages any sum which the libellant has received from an underwriter on account of the same injury, the rule being, that a wrong-doer in such a case cannot claim the benefit of the contract of insurance if effected by the person whose property he has injured.  Maude & P. on Ship. (3d ed.) 465; Flanders on Ins. 591.

Instead of that, the law is well settled, that the reception of the amount of the loss from the insurers is no bar to an action subsequently commenced against the wrong-doer to recover compensation for the injury occasioned by the collision.  *Mason* v. *Sainsbury*, 3 Doug. 61.

Authorities to that effect are numerous; and it was expressly decided by the judges, in *Yates* v. *Whyte et al.*, 4 Bing. N. C. 272, that the defendants in such a case were not entitled to deduct from the amount of damages to be paid by them a sum of money paid to the plaintiff by insurers in respect of such damage.

None can recover compensation twice in respect of the same injury; but what the plaintiff recovers under his policy of insurance is not compensation for damages, but a payment under a contract independent of the claim against the wrong-doer; and the better opinion is, that the principle which excludes double compensation does not strictly apply to obligations not in the same right.  May on Ins. 555.

Compensation by the wrong-doer after payment by the insurers is not double compensation, for the plain reason that insurance is an indemnity; and it is clear that the wrong-doers

are first liable, and that the insurers, if they pay first, are entitled to be subrogated to the rights of the insured against the insurers.

Support to that proposition is found everywhere; and some of the authorities go further, and decide, that the suit against the wrong-doer for the benefit of the insurer must be prosecuted in the name of the injured party. *Randall* v. *Cockran*, 1 Ves. Sen. 90; *Godsall* v. *Boldero*, 9 East, 81; *Irwing* v. *Richardson*, 1 B. & Adol. 196; *Case* v. *Davidson*, 5 Maule & Selw. 81; *Clark* v. *Blything*, 2 Barn. & Cressw. 256.

Suppose that is so, still it cannot affect the question in this case, which is, whether the decree should be for a moiety only of the damages occasioned by the collision, or for the entire amount. Waiving the question of parties, it is clear that the respondents are liable for one or the other of those amounts. 1 Park on Ins. (8th ed.) 330; *Insurance Company* v. *Sainsbury*, 3 Doug. 245; *Yates* v. *Whyte et al., supra;* 2 Marsh on Ins. (2d ed.) 794; 2 Park on Ins. (8th ed.) 969; 2 Phillips on Ins. (5th ed.), sect. 2001.

Beyond all doubt, the owners of a ship or vessel injured by collision may proceed to recover compensation either against the owners, or against the master personally, or against the ship herself, at their election. *The Volant*, 1 W. Rob. 387; Maude & P. on Ship. (3d ed.) 466.

Argument to support that proposition is unnecessary; but it is equally well settled that the cargo which is on board the colliding vessel at the time the collision occurs is not liable for the damage done by the ship in which it is carried. *The Victor*, 1 Lush. Adm. 76.

Damage is sometimes said to be done by the ship, but that is a mere form of expression; the truth being, that it is either done by the owner, or by the master and crew employed by the owner, who is responsible for their conduct; because, being employed by the owner, they are his agents, but they are not the agents or servants of the owner of the cargo, and for that reason the cargo is not liable for the consequences of a collision.

Matters of fact need not be discussed in this case, as it is admitted by the parties that the collision occurred through the

mutual fault of the steamboat " Atlas " and the steam-tug " Kate " which had the canal-boat in tow with her cargo on board. Both courts below gave the libellants a moiety of the damages ascertained by the commissioner, and the claimants insist that the decree of the Circuit Court is correct. On the other hand, the libellants insist that they are entitled to recover the entire damages occasioned by the collision, and that the decree of the Circuit Court should be reversed.

Disasters of the kind occur from different causes and under very different circumstances, and the rules of admiralty law applicable in the determination of such controversies vary to meet the varying circumstances which give rise to the accident. Judicial experience has given no better guide than that furnished by Lord Stowell, than whom no abler judge ever presided over the Admiralty Court of the parent country. Speaking of such disasters, he remarked to the effect that there were four possibilities under which an accident of the kind may occur. In the first place, it may happen without blame being imputable to either party; as where the loss is occasioned by a storm, or any other *vis major*. In that case, the misfortune must be borne by the party on whom it happens to fall, the rule being, that the party not injured is not responsible to the losing party in any degree. Secondly, a misfortune of the kind may arise when both parties are to blame; as where it appears that there has been a want of due diligence or of skill on both sides; and he adds, that in such a case the rule of law is, that the loss must be apportioned between them, as having been occasioned by both. Thirdly, it may happen by the misconduct of the suffering party only; and then the rule is, that the sufferer must bear his own burden. Lastly, he remarks, that it may happen from the fault of the ship which ran the other down; and in that case the injured party is entitled to an entire compensation from the other. *The Woodrop*, 2 Dodson, 85.

Freedom from fault is a good defence in a cause of collision against a claim for damage promoted by an injured party, and it entitles the promoter of such a suit to full compensation from the opposite party, if proved to be guilty. Where neither party is in fault, and the damage was the result of unavoidable accident, the rule that the loss must be borne by the party on whom it

fell is one of universal application. *The Shannon*, 1 W. Rob. 470; *The Itinerant*, 2 id. 243; *The Locklibo*, 3 id. 318; *The Morning Light*, 2 Wall. 560.

Under the second of the foregoing rules, — when both vessels are in fault, — the sums representing the damages are added together, and the amount is equally divided between the parties; and that rule prevails in all cases where there is mutual fault, even though one of the vessels may have been much more in fault than the other. Fault being imputed to both vessels, and the charge being proved, the inquiry which was most to blame is immaterial, as the damages must be divided between the two, according to the rule provided in the admiralty courts. *Vaux* v. *Sheffer*, 8 Moore, P. C. C. 87.

Attempt was made in the Court of Sessions in Scotland to establish an exception to that rule; and the court finding, in a case where both vessels were in fault, that the greater share of the blame rested on one, decided that her owners were liable for two-thirds of the damage. Maude & P. on Ship. (3d ed.) 470; *Le Neve* v. *Shipping Co.*, 1 Shaw's Cas. 378.

Prompt appeal was taken from that decree to the House of Lords, where the decree was reversed, upon the ground that the true rule was the one laid down by Lord Stowell, that, where a misfortune of the kind happens from the want of due diligence or skill on both sides, the loss must be apportioned between them, as having been occasioned by the fault of both. *Hay* v. *Le Neve*, 2 Shaw's H. of L. Cas. 400; *The Washington*, 5 Jur. 1067.

Both vessels being in fault, the positive rule of the court of admiralty, says Lord Denman, requires the damage done to both ships to be added together, and the combined amount to be equally divided between the owners of the two. *De Vaux* v. *Salvador*, 4 Ad. & El. 431.

Innocent parties in cases of the kind are entitled to full compensation, but the admiralty rule as between wrong-doers is that the combined amount of the damage shall be divided between the owners of the two offending vessels. Text-writers of standard authority, as well as courts, have adopted the same rule, and hold, that, where both vessels are in fault, the loss must be apportioned between them, as having been occasioned by the

fault of both. Maclachlan on Ship. (2d ed.) 286 ; 1 Pars. on Ship. 527 ; Williams & Bruce, Prac. 71.

All of these writers, and many others, lay down the rule, that, where both parties are to blame, the loss must be apportioned between them ; and the authors last cited say that the rule is founded upon the principle which, from ancient times, has been applied in the Admiralty Court, that damage by a common fault shall be considered as a common loss. *The Lima*, 4 Jur. N. S. 147 ; *The Aurora*, Lush. Adm. 329.

Strict justice would require, said Dr. Lushington, that the burden of making good the loss should fall upon the two delinquents in proportion to their delinquency, but in practice the proportion is impossible to be ascertained. Such a rule, if adopted, would be utterly impracticable, for the reason that the court cannot apportion the loss according to the *quantum* of neglect or culpability on the one side and the other ; hence equal apportionment is the universal rule where there is mutual fault, even though the fault on one side may be much greater than the fault on the other. *The Milan*, Lush. Adm. 401 ; *The Linda*, 4 Jur. N. S. 147.

Courts and text-writers in all, or nearly all, of these cases appear to have proceeded, throughout the period which they cover, upon the ground that the rule of apportionment requiring each party, where both are in fault, to bear a moiety of the loss, applies solely to the case of the wrong-doers, and that proof of entire innocence or freedom from fault is a good defence to every portion of a claim for damage, and that it entitles the promoter of a suit for such a claim to full compensation for his loss from the guilty party. Opposed to that conclusion is the case of *The Milan*, Lush. Adm. 401, in which Dr. Lushington remarks to the effect that the practice of the Court of Admiralty appears to have been uniform, that, where both ships are to blame, the owners of cargo equally with the owners of ships recover a moiety of their damages, except in cases where the statute prescribes a different rule ; and the learned judge refers to the reported case of *Hay* v. *Le Neve*, 2 Shaw's Sc. App. 405, in support of the proposition.

Other cases are also referred to for the same purpose ; but the reporter appends a note to the case, that the other cases are

not reported.   Enough appears in that case to show that both ships were in fault, — the one for the want of lights, and the other for the want of a sufficient lookout; and the decree was that the whole of the damages sustained by the libellants for the ship and cargo should be borne equally by the litigant parties; but it was the owners of the injured ship who promoted the claim, and it does not appear that the question before the court here received any consideration at the bar or by the court.

Two admissions are made by the court in the case of the " Milan," which it is important to notice, as they are undoubtedly correct, and will afford much aid in disposing of the question involved in the present record :  1. That the owner of the cargo, in such a controversy, could recover for his whole loss in an action at law.    2. That the owner of the cargo, in such a case, is to be considered as a perfectly innocent party.

Nothing is more clear than the right of a plaintiff, having suffered such a loss, to sue in a common-law action all the wrong-doers, or any one of them, at his election; and it is equally clear, that, if he did not contribute to the disaster, he is entitled to judgment in either case for the full amount of his loss.   He may proceed against all the wrong-doers jointly, or he may sue them all or any one of them separately; but if he sues them all jointly, and has judgment, he cannot afterwards sue them separately, or if he sues one separately and has judgment, he cannot afterwards sue them all in a joint action: because the prior judgment against one is, in contemplation of law, an election as to that one to pursue his several remedy, but it is no bar to the suit for the same wrong against any one or more of the other wrong-doers.   *Murray* v. *Lovejoy*, 2 Cliff. 196; s. c. 3 Wall. 19; *Smith* v. *Hines*, 2 Sumn. 348; *Webster* v. *Railroad*, 38 N. Y. 261.

Acts wrongfully done by the co-operation and joint agency of several persons constitute all the parties wrong-doers, and they may be sued jointly or severally; and any one of them, said Spencer, C. J., is liable for the injury done by all, if it appear either that they acted in concert, or that the act of the individual sought to be charged ordinarily and naturally produced the acts of the others.   *Guile* v. *Swan*, 19 Johns. 382.

Confirmation of the second admission is not required, as sufficient has already been remarked to show that the proposition is correct, and that it is universally approved.

Shippers having lost cargo by such a disaster, may pursue their remedy by libel *in personam* against the owner of the offending vessel, or they may, at their election, proceed in an action at law, either in the Circuit Court, if the parties are citizens of different States, or in a State court, as in other cases where the Federal and State courts have concurrent jurisdiction. *Steamboat Company* v. *Chase*, 16 Wall. 533; *The Belfast*, 7 id. 644.

Suitors have a right to a common-law remedy in all cases where the common law is competent to give it. Consignees or shippers injured in their property by collision may proceed *in rem* in the admiralty, or they may bring a suit *in personam* in the same jurisdiction, or they may elect not to go into admiralty at all, and may resort to their common-law remedy in the State courts or in the Circuit Court of the United States, if they can make proper parties to give that court jurisdiction.

Common-law remedies in cases of tort, as given in common-law courts, and suits *in personam* in the admiralty courts of this country, bear a strong resemblance to each other in respect to parties, and the effect of a recovery by the injured party against one or all of the wrong-doers, and the extent of redress to which an innocent party is entitled against the wrong-doer. *Simpson* v. *Hand*, 6 Whart. 321.

Different systems of pleading and modes of proceeding prevail in the two jurisdictions, and in some few respects there is a difference in the rules of evidence adopted in the admiralty court from those which prevail in common-law actions. All know that the libel in the Admiralty Court takes the place of the declaration in an action at law, and that the answer is the substitute for the plea of the defendant.

Contributory negligence on the part of the libellant cannot defeat a recovery in collision cases, if it appears that the other party might have prevented the disaster, and that he also did not practise due diligence, and was guilty of negligence, and failed to exercise proper skill and care in the management of his vessel. Proof of the kind will defeat a recovery at common

law; but the rule in the admiralty is, that the loss in such a case must be apportioned between the offending vessels, as having been occasioned by the fault of both; but the rule of the common law and of the admiralty is the same where the suit is promoted by an innocent party, except that the moiety rule may be applied in the admiralty, if all the parties are before the court, and each of the wrong-doers is able to respond for his share of the damage. Subject to that qualification, the remedy of the innocent party is substantially the same in the admiralty as in an action at law, the rule being, that in both he is entitled to an entire compensation from the wrong-doer for the injury suffered by the collision. *Colegrove* v. *Railroad*, 20 N. Y. 493; *Catlin* v. *Hills*, 8 C. B. 125; *Vanderplank* v. *Miller*, 1 Moo. & Mal. 169.

Goods shipped as cargo, and their owners, as in the case before the court, are innocent of all wrong; and the owners of the cargo may sue the owners of one of the ships, or both, and they may sue at law or go into the admiralty, at their election, and, having proved their case, they are as much entitled to full compensation in the admiralty as they would have been if they had elected to pursue their common-law remedy, saved to them by the proviso contained in the ninth section of the Judiciary Act. 1 Stat. 77.

Co-wrong-doers, not parties to the suit, cannot be decreed to pay any portion of the damage adjudged to the libellant, nor is it a question in this case whether the party served may have process to compel the other wrong-doers to appear and respond to the alleged wrongful act.

Even suppose that the case of the "Milan" is a correct exposition of the admiralty law, as administered in the jurisdiction where the decision was made, still it cannot control the question before the court, for the reason that the rule of practice here is different, as is clearly shown by the judgment of this court delivered at the last term of the court. *The Alabama and The Game-cock*, 92 U. S. 695.

· Counsel of experience and ability attempted to maintain in that case the same theory as that now advanced in argument here by the appellees, and they cited *The Milan*, Lush. Adm. 403, *The Atlas*, 4 Ben. 28, s. c. 10 Blatch. 460, in sup-

port of the proposition which they desired the court to adopt. Suffice it to remark, by the way of explanation, that all the parties interested in the case then under argument were before the court; which is all that need be said in respect to the operation of such a theory, if applied in a case where the parties interested were duly served and were present, and it did not appear that each of the respondents was not able to respond for a moiety of the damages suffered by the owner of the cargo.

Contingencies are also portrayed, in which it is conceded that the theory may be applied without serious injustice or inconvenience; but the court proceeds to say, that it would seem to be just that the owner of the cargo who is supposed to be free from fault should recover the damage done thereto from those who caused it, adding, that if he cannot recover from either of them such party's due share, he ought to be able to recover it from the other, and that the same reason for a division of the damage does not apply to the owner of the cargo as applies to the owners of the ships. Remarks are then made to show that the moiety rule is both just and expedient between the ships where both are in fault; but the court proceeds to say, that if either is unable to pay his moiety of damage, there is no good reason why the owner of the cargo should not have a remedy over against the other, and finally remarks, that the moiety rule was adopted for the better distribution of justice between wrong-doers, and that it ought not to be extended so far as to inflict positive loss to innocent parties. *The Gregory*, 9 Wall. 516.

Much care was taken in framing the decree in that case, which of itself shows to a demonstration that the court never intended to adopt a theory which would fail to give innocent parties full compensation suffered by a collision, and that they never meant to extend the moiety rule so as to do injustice to an innocent tow or to the owner of cargo. Such a result can never be sanctioned by the justices of this court, so long as they adhere to the rule that when a third party has sustained an injury to his property, from the co-operating consequences of two causes, though the persons producing them may not be in intentional concert to occasion such a result, the injured

person is entitled to compensation for his loss from either one or both of them, according to the circumstances of the incident. *The New Philadelphia*, 1 Black, 76; *Boyer v. Sturgis*, 24 How. 122.

Except when both parties are to blame, the offending party can recover nothing, whether he pursues his remedy in the admiralty or at common law. Where both are to blame, neither can recover any thing at common law, but the admiralty requires each to suffer a moiety of the loss, to be ascertained in the manner already explained.

Parties without fault, such as shippers and consignees, bear no part of the loss in collision suits, and are entitled to full compensation for the damage which they suffer from the wrong-doers, and they may pursue their remedy *in personam*, either at common law or in the admiralty, against the wrong-doers or any one or more of them, whether they elect to proceed at law or in the admiralty courts.

Such a party is not required in any event to bear any portion of the loss suffered by others, the rule being, that where the collision occurs exclusively from natural causes, without any fault of either of the colliding vessels, the loss shall rest where it happens to fall, on the principle that no one is responsible for such a disaster, when produced by causes over which human skill and prudence can exercise no control.

Inevitable accident is a good defence in such a controversy, where both vessels are free from blame; but it is utterly unavailing if either or both were in fault. Where the vessel of the respondent is alone in fault, the libellant is entitled to recover full compensation for his damages; and the rule is, that if the vessel of the libellant is alone in fault, the decree must be for the respondent, that the libel be dismissed.

Cases also arise where both vessels are in fault; and the repeated decisions of this court have established the rule, that in that contingency the damages shall be equally apportioned between the offending vessels, as having been occasioned by the fault of both. *The Catharine*, 17 How. 177; *The Sunnyside*, 91 U. S. 216; *The Continental*, 14 Wall. 355; *The Morning Light*, 2 id. 560; *The Pennsylvania*, 24 How. 313.

Innocence entitles the loser to full compensation from the

wrong-doer, and it is a good defence against all claims from those who have lost. Individual fault renders the party liable to the innocent loser, and is a complete answer to any claim made by the faulty party, except in a case where there is mutual fault, in which case the rule is that the combined amount of the loss shall be equally apportioned between the offending vessels.

*Decree reversed and cause remanded, with directions to reverse the decree of the District Court, and enter a new decree in favor of the libellants for the entire damages as ascertained by the commissioner.*

MR. JUSTICE BRADLEY did not sit in this case.