### ARBO v. BROWN and others.*

*(Circuit Court, E. D. Louisiana. 1881.)*

1. INEVITABLE ACCIDENT—DAMAGES.

Damages resulting from an inevitable accident must be borne by the party on whom they fall. Hence, where a steamer that was safely moored for all ordinary emergencies broke loose in a storm and inflicted damage on other shipping, her owners cannot be compelled to make good the loss.

In Admiralty.

*R. K. Cutler*, for libellant.

*E. H. Farrar*, for defendants.

PARDEE, C. J. The evidence shows that September 1, 1879, libellant was the owner of a barge loaded with wood, moored in the harbor of New Orleans, at the foot of Delachaise street, near the Louisiana ice works.

On the same day the Governor Allen, a dismantled steam-boat, being without engines, chimneys, etc., but with her boilers taken down and piled amidship, was, and had been for some time, moored on the opposite side of the river, and nearly abreast the wood-boat of libellant. The Allen was lying head up stream, and she had out some eight lines, fastened to check-posts and dead-men. Some of these lines had been in use some time and some of them were doubled, but the bow or head-line was new, and the stern-line nearly new. According to the weight of evidence, (and upon this there is only one objecting witness,) the Allen was, apparently, securely and safely moored, with a watchman aboard. On this first day of September a storm, prevailing from the day before, rose into a hurricane about 11 o'clock in the morning, blowing at the rate of 40 miles an hour, and continuing until about 11 o'clock at night. About 2 o'clock of the afternoon, and during this storm, the Allen broke away from her moorings, the stern and breast-lines giving way first, some parting and others pulling up dead-men, and pulling up and breaking off check-posts, letting the stern of the Allen blow out stream, when the check-post to which the head-line was tied also pulled up, and the storm carried the Allen directly over the river to the libellant's wood-boat. The Allen went over the river sideways and struck the wood-boat sideways, or broadside, driving her guard up and over the wood-boat. She struck the wood-boat with great force, and, it is probable, broke in and injured her side towards the stern. As the Allen's guard was forced over and on top of the wood-boat, the Allen was listed or careened to the other side. Lines were at once got out, and the Allen was tied, with head, stern, and breast-lines, in a place where a tug-boat could not have pulled her out while the storm prevailed. The listing of the Allen to windward exposed her seams above the water-line, which were open from long exposure to the force of the waves and water, and the Allen began to fill. As she filled she listed more, and then the boilers, piled on deck, rolled down to the guard, and it is probable it was then too late to right the boat, even if she could have been got off. Soon after the

*Reported by Joseph F. Horner, Esq., of the New Orleans bar.

Allen reached this side two of the libellees, alleged owners of the Allen, reached the place. These parties, with others, made various efforts to prevent further injury, and to get the Allen off, without avail. Everything was done or attempted that could be done, or was suggested, except that the parties favorable to the wood-boat asked or suggested that the lines of the Allen should be loosed and so let her float down stream and sink by herself. Upon this last suggestion a difference of opinion was expressed. Some thought that such a course would save the wood-boat; others that the Allen was a protection to the wood-boat; and there was still another opinion, which was probably the better one, that the Allen could not be got out or floated out until the gale that blew her in had subsided. Anyhow, nothing was done at that time, and soon after Capt. Brown, the managing man, went away. Some time after this, and after the Allen sank, a Mr. Buck, under the direction of a lame man, cast off the bow-line, so as to let the Allen go clear of the wood-boat, and the Allen slid down stream; but her stern-line not being cast off she pulled out a check-post on the wood-boat, and that and the Allen together tore off some of the planks of the wood-boat and set a lot of the wood adrift. This suit is brought by the libellant to make the owners of the Allen liable for his damages suffered to the wood and barge.

Under the facts of the case I am of the opinion that the owners were not in fault, and that the damages suffered by the libellant were the result of inevitable accident. The Allen was safely moored for all ordinary and foreseen emergencies. The evidence shows that when she broke away one check-post pulled up and was carried by the hawser across the river, and was a cypress stick of about 15 feet in length, that had been standing for years for the earth to settle and pack around it, and it was set some 10 feet in the ground. The hurricane was unusual, and could not have been foreseen. As counsel say, "that storm was historic;" it flattened cane crops, blew down and unroofed houses and sugar-houses; trees were blown up by the roots; wood-boats, steam-boats, and coal-boats were blown adrift and wrecked in this harbor. What took place on this side of the river was the inevitable result of the collision of the Allen with the wood-boat; and, so far as I can see, there was no carelessness nor negligence on the part of the owners notified, on this side of the river. Everything seems to be done that would likely to be of any service in protecting property. What was asked by the libellant's friends,— the loosening of the new lines put out on the Allen, and the neglect and refusal of which is the gravamen of the libel,—seems to have been improper, because, when done later, the damage was increased.

Inevitable accident is that which the party charged with the offence could not possibly prevent by the exercise of ordinary care, caution, or nautical skill. See 2 Wall. 556; 14 Wall. 215; 24 How. 307.

I am satisfied that neither ordinary care, caution, nor nautical skill could have prevented the occurrences which resulted in the damages of which libellant complains. When a collision takes place by any inevitable accident, or by any *vis major*, the loss is to be borne by the party on whom it falls. See Desty, Adm. § 384, and authorities cited in note 11.

This conclusion reached, renders it unnecessary to go further into the case; but, having carefully examined the whole evidence, I may say that I have been forced to the conclusion that the damages actually suffered by libellant, growing out of the collision with his wood-boat and the Allen, have been enlarged and magnified, and, if he had otherwise a case, he could not recover over some $40, with costs doubtful. The custom of selling wood by short measurement is not lawful, reasonable, or moral, and, if proved, cannot be invoked to prove more cords of wood on a flat-boat than the boat will hold, so as to enhance damages in a case of collision.

Let a decree be entered dismissing the libel, with costs.