## The Columbia.[1]

### Boyer *et al. v.* The Columbia.

*(District Court, S. D. New York. November 10, 1891.)*

COLLISION—VESSEL AT PIER—WIND—INEVITABLE ACCIDENT—INATTENTION.

The steam elevator C., having a large surface exposed to the wind, in attempting to moor along-side certain barges at Twenty-Fourth street and North river, struck and sunk one of them. The elevator claimed that the collision was an inevitable accident, due to a sudden gust of wind. The evidence showed that the wind was strong on the New York side; that the elevator left the less exposed side of the river and crossed, at Hoboken, where the wind in the lee was light, with the wind nearly astern, to the more exposed side, where the barges lay, and where especial care in a strong wind was necessary. *Held* that, though inevitable accident may arise from sudden gusts of wind, the evidence showed that this collision arose from lack of sufficient caution, and inattention of the pilot, and that the C. was liable.

In Admiralty. Suit to recover damages caused by collision.
*Carpenter & Mosher*, for libelants.
*Platt & Bowers*, for claimant.

BROWN, J. In the afternoon of April 23, 1891, the libelants' scow barge Nestor, with about 450 tons of fine sugar on board, was lying in the slip between Twenty-Third and Twenty-Fourth streets, North river, moored along-side of two lighters, which were next outside of, and moored to, the steamer Ethopia, which lay on the southerly side of the

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

Twenty-Fourth street pier. The stern of the lighter was a few feet inside of the outer end of the pier, and she was waiting to have her cargo discharged upon the steam-ship. While thus moored, she was run into and sunk, not far from half past 2 P. M., by the steam elevator Columbia, as she came into the slip for the purpose of discharging the cargoes of the lighters into the steamer. The elevator had come from Hoboken, crossing the river in the ebb-tide till quite near the pier off Twentieth street, when she headed directly up river for the slip. The claimant contends that the damage is to be ascribed to inevitable accident, on the ground that the elevator, though handled with all proper care, was struck by a sudden gust of wind after she had stopped off Twenty-Third street, and was thereby carried against the libelants' barge, despite all efforts to prevent it. No doubt cases may arise of inevitable accident produced by gusts of wind, (*The Lady Pike*, 2 Biss. 144;) but to admit of that defense it must appear that the danger was not to be apprehended, or, if it was liable to arise, that a proper watch was kept beforehand, and seasonable precaution taken against such a liability, and that reasonable skill was used when danger arose. *Union St. Co.* v. *New York*, 24 How. 313; *The Morning Light*, 2 Wall. 550; *The Mabey*, 14 Wall. 204. The facts in the present case fall short of these requirements.

There is no little conflict in the evidence as regards the force of the wind on the easterly side of the river at the time of the Columbia's approach and before. All of the Columbia's witnesses say that when the elevator left Hoboken the wind was light,—not more than three or four miles an hour. Nearly all of them speak of a gust of wind that struck the elevator at or near Twenty-Third street, and testify that the wind increased rapidly after the accident. Several of her witnesses, however, state that from the time they reached mid-river the wind was perceptibly increasing; several estimate the wind at 9 or 10 miles an hour when they reached Twentieth street; and one or two leave it doubtful whether at Twenty-Third street there was any sudden gust, or more than a gradual increase of the wind's force. The libelants' witnesses all deny that at the pier at Twenty-Fourth street there was any sudden gust of wind of any importance at the time of the accident. They assert that the breeze was pretty steady all the afternoon, increasing somewhat towards 4 o'clock. Several of these witnesses mention circumstances of their employment tending to corroborate their testimony; while the record of the weather bureau shows that upon the top of the Equitable building, about two miles from the place of the accident, the wind was from the south-west, and that between 12 and 1 o'clock P. M. it blew at the rate of about 12 miles per hour; and from 1 to 4 steady at about the rate of 19 miles per hour, diminishing at 4:30, when it changed to the northwest. The wind being from the south-west, which is about three points off the Hoboken shore, and the Columbia being in the lee of the buildings there, the wind would naturally be less felt at the start; while at the bend of the river at Twenty-Fourth street, on the New York side, with nothing below as a shelter, a south-west wind is felt in its greatest force. The need of special caution at that place is well understood.

The Columbia in crossing from Hoboken to Twentieth street would moreover have a south-west wind almost directly astern, and her pilot, who was in a closed pilot-house, and did not come out till just before the accident, naturally failed to observe its increasing force as he got out into the river. These proofs leave no doubt in my mind that when the Columbia approached her destination at Twenty-Fourth street the wind was much stronger than her officers in their testimony admit; and that on the east side of the river it was not less than 12 or 15 miles an hour, and that, being astern, its force was not appreciated by the pilot until the engines were stopped, and he came out on deck, shortly before reaching the slip. The Columbia, although one of the best and most powerful of the floating elevators in the harbor, had also a greater surface exposed to the wind, having a square-sided tower about 60 feet high and 25 feet across, a great surface which made her unmanagable in a high wind, and required special prudence in handling her in a fresh breeze. Her pilot stated that in a wind blowing at the rate of 10 miles an hour, or upwards, he should not have deemed it prudent to attempt to make a mooring near the scows, but should have gone first to the outer end of the pier. As I have no doubt that the wind on the New York side of the river was much above that rate, it follows that the attempt to make a landing inside the slip, near the boats, was imprudent and unjustifiable. It arose, I have no doubt, from the facts above stated, that the wind was much less at Hoboken, and because its force on the New York side was not appreciated, in the absence of any watch or precaution in regard to it, until it became necessary to stop to withstand its force. The sudden apparent increase in the wind when the pilot came out on deck would then doubtless seem like a sudden gust. I am not satisfied that there was any such change as might not have been foreseen and guarded against had proper and seasonable attention been given to it.

Decree for libelants, with costs.