THE REBECCA.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1903.)

No. 479.

1. COLLISION—SCHOONERS TACKING IN NARROW STREAM—NEGLIGENCE OF OVERTAKING VESSEL.

Evidence examined, and *held* to establish by a preponderance of proof that a collision between two schooners which were tacking in a narrow stream in the daytime was due to the negligent navigation of the one which, as the overtaking vessel, was bound to keep out of the way, in allowing herself to come too close to the other, striking the latter as they came about at the end of a tack.

Appeal from the District Court of the United States for the District of South Carolina.

Julian Mitchell, Jr., for appellant.

J. P. K. Bryan, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from the District Court of the United States for the District of South Carolina, sitting in admiralty. It is a case of collision between two schooners, the Maggie and the Rebecca, on the morning of the 9th October, 1901, about 9 o'clock a. m., on a perfectly clear day. These two schooners were in the Dawho river. This is a navigable stream, part of the navigable waters of the United States, one of the links in the inland navigation between Virginia and Georgia, whose course is almost parallel with the ocean. The wind on this morning was from the northeast. The two schooners were tacking up the stream, both on their way to the port of Charleston, the wind being almost ahead. They had each of them made two tacks. On the third tack they came into collision, the Maggie receiving a blow on the port side abaft of the after rigging. From the effect of this blow she filled and sank. The libel was filed by the master of the Maggie seeking to hold the Rebecca for the damages which he sustained. The case was heard before the District Judge, the witnesses appearing and testifying before him. He came to the conclusion that the collision occurred from inevitable accident and dismissed the libel. An appeal was allowed, and the cause is here on assignments of error.

The testimony is conflicting to a degree, the crews and masters of both vessels contradicting each other in almost every material fact. Both sides evidently recognized that the case would turn upon the fact which of these two schooners was the overtaking vessel. The testimony on each side is directed to this point.

The case to which the libelant directed his testimony, and which he sought to maintain, is that these two schooners tacking in this narrow river were very close together, the Maggie leading; that when they came about, having run out their tack, they were so near together that he could put out his hand and touch the Rebecca. In coming about with their sails shaking in the wind they collided, the collision having been caused by the proximity of the Rebecca, unwarrantable under the circumstances, as she was the overtaking vessel.

The case of the Rebecca, testified to by her master and one of her crew, the rest of the crew not testifying, was that the Rebecca, being the heavier vessel, was leading on that tack. That she came about before the Maggie and was on the new tack, but before she had proceeded any distance on the tack she touched on a bank which retarded, if it did not destroy, her speed. Whilst she was on this bank the Maggie by this time had run out her tack and had come about bearing down on her, striking her hull, and then the two schooners came together. The impact struck a bulkhead on the Maggie, opened her seams, the water poured in, and sank her. Two facts are testified to on both sides. The one is that the impact of

the schooners was very light; the other is that no sign of a blow was apparent on the Rebecca, except, perhaps, a little scraping of her paint.

In describing how the collision occurred, the witnesses for the Rebecca say that, whilst she was impeded on the bank, the Maggie bore down on her; one of them, the master, says that the Maggie had all the headway on her because the whole of her side was held down underneath the water; the other witness, Holmes, says that the Maggie tacked and came down towards us, all her sails drawing. Now, both sides agree that the impact of the two vessels was light. It was undisputed that no bruise appeared on the Rebecca, and that the first impact was on the sides of the two schooners. It would seem impossible that this evidence on the part of the Rebecca can be true. If the Maggie came down on the Rebecca whilst she was slowly extricating herself from the bank, all the sails of the Maggie set and drawing, with such speed on her as to put her side under water, the Maggie having a full cargo, the impact from the momentum would have been heavy. Yet Holmes adds that the Maggie, coming this way, struck the Rebecca one and a half feet aft her forward rigging and broke nothing on either vessel. Only when their sterns came together, after the Maggie was shaking in the wind, was any damage done. On the other hand, there is no necessary improbability in the case made by the Maggie. The place in which the schooners were tacking was a narrow river, they were both on the same tack, both about to come about as they were rapidly approaching the river bank. To come about they had to get into the wind, their sails shaking, having headway from the momentum at the time of going about. If they were very close together nothing is more probable than a collision. This witness for the Maggie says that at the time of the collision the Maggie was the overtaken vessel, being ahead, and that it was the duty of the Rebecca, the overtaking vessel, to keep out of her way. Rule 22. On this point they are contradicted by Bernard, master of the Rebecca, and Holmes, one of the crew. These witnesses say that the Rebecca was ahead. But two witnesses connected with neither vessel, who were on schooners in the same river at this same time, Washington, on the Hamilton, and Polite, on the Jubilee, both swear that the Maggie was ahead of the Rebecca. Besides this, Smith, a seafaring mechanic, who examined the Maggie very shortly after the accident, testifies as to the character of the blow which he found on the Maggie. He says that it "was straight in, and looked as though one vessel had a great deal more headway on it than the other, because you could see where the other dragged along going forward." If this be so—and Smith is uncontradicted on this point—then the Maggie must have been struck by a vessel moving from behind her against her. In the mass of contradiction which admiralty cases disclose, and to which this case is no exception, a fact like this, which speaks for itself, the character of the blow, goes far to create a preponderance of the evidence and to relieve the situation. There is another fact to which witnesses on both sides testify, which seems to bear out the witnesses for the Maggie, that when the collision took place both vessels were almost stationary. All

say that, just as the collision was about to take place, Pinckney, who had control of the helm of the Maggie, left his post and ran forward, trying to avert the blow. Pinckney was the sailing master of the Maggie. He is a seaman of long experience. No seaman in his senses would have deserted the helm if his vessel was tacking and in full motion, sailing close to the wind. Under such circumstances his whole attention would be directed to holding her up to the wind, and a neglect of this would have been disastrous. Nor would any seaman, however short his experience, attempt to ward off the collision of two vessels if they were approaching at speed. Such an attempt would have been as futile in result as it would be dangerous to himself. Pinckney says that he tried to shove her off. His action is entirely consistent with the undisputed fact that the impact was very light, this proving that the two vessels were approaching each other slowly.

We are of the opinion that, whether we take the testimony of the libelant or of the respondent, the collision could not have been the result of inevitable accident. "Inevitable accident," says the court in The Mabey, 14 Wall. 204, 20 L. Ed. 881, "must be understood to mean a collision which occurs when both parties have endeavored by every means in their power, with due care, caution, and a proper display of nautical skill, to prevent the occurrence of the accident, and when the proof shows that it occurred in spite of everything nautical skill, care, and precaution could do to keep the vessels from coming together." In The Morning Light, 2 Wall. 550, 17 L. Ed. 862, the court says: "When the collision occurs exclusively from natural causes, and without any fault or negligence of either, the rule of law is that the loss must rest where it fell." Taking this whole record, the collision on a clear day, at 9 o'clock in the morning, the proximity of the schooners, the account given by each side of the collision, it is not possible to escape the conviction that there was negligence and want of nautical skill and proper precaution on the part of one or the other of the two vessels. We are also of the opinion, considering the whole testimony and the inferences to be drawn from it, that the preponderance of the evidence fixes the fault on the Rebecca. She was evidently the overtaking vessel. Possibly the two schooners were racing, but, from whatever cause she allowed herself to get too close to the Maggie, the result of this proximity was the collision.

The decree of the District Court is reversed, and the case is remanded to that court for such other proceedings as may be necessary as the result of this opinion. Reversed.