## THE JULIA.

### (District Court, N. D. New York. December 29, 1898.)

1. TUG AND TOW—COLLISION OF TOW WITH BRIDGE—NEGLIGENCE OF TUG.
    A small tug engaged to tow loaded canal boats, six miles down the Hudson, in the daytime, made up a fleet of six, arranged two abreast and lashed together, making the fleet 54 feet wide and 200 feet long. Some of the boats were loaded with lumber standing 11 feet above the water. The river was high and the wind strong. In passing between the piers of a bridge, 200 feet apart, one of the boats collided with a pier and was sunk. A fleet of the same number, similarly made up, preceding the one in question, passed the bridge in safety. *Held*, that the collision was not due to inevitable accident, but to the negligence of the tug either in making up the fleet as it was or in its navigation.

2. SAME—SUIT FOR INJURY TO CARGO OF TOW.
    In a suit against a tug by the owner of the cargo of a tow for its injury resulting from the collision of the tow with the pier of a bridge, where the tug was at fault, it is no defense that the tow was also negligent.

### On Final Hearing.

On the afternoon of November 27, 1897, the steam tug Julia was employed to tow the canal boat Helen A. Allen from Watervliet to a point below the upper bridge at Albany. The canal boat was loaded with 8,700 bushels of corn. The tow consisted of six canal boats, three in each tier. The Allen was the last boat on the port side of the tow. On the starboard side were two boats loaded with lumber, the load extending above the water about 11 feet. The other boats extended about 4 feet above the water. The wind was from the northwest. The water in the river was high and the current was swifter than usual. The boats of the tow were lashed together, the entire tow being about 200 feet in length by 54 feet in width. The Julia was towing with a 75-foot hawser. When a short distance above the upper bridge at Albany the wind veered and blew briskly from the southwest. The piers of the bridge are about 200 feet apart. In the endeavor to pull the tow through this space the tug so maneuvered that the port bow of the Allen, which occupied the extreme northeast corner of the tow, struck the stone abutment of the bridge. The Allen sank and her cargo was damaged. A tug and tow similarly made up preceded the Julia down the river and had no difficulty in passing safely through the piers. The collision occurred about 20 minutes past 3. The libelant, the Reliance Marine Insurance Company, paid the loss and became subrogated to the rights of the owner of the cargo. The libel alleges "that the tug was among other things in fault in that, having ample room and depth of water, she towed said canal boat in such a manner and on

such a course as to bring the latter in contact with the said bridge abutment, instead of towing her on such a course as to safely clear the same." The defense is "that when said fleet of canal boats including said boat H. A. Allen was about abreast of said bridge they were struck by a sudden and unexpected squall and were carried against said bridge without any fault of said tug, and if said accident was avoidable at all it was only so avoidable by the use of the rudders of the said canal boats."

John W. Ingram, for libelant.

W. Frothingham, for claimant.

COXE, District Judge. The task of the Julia was of the simplest character. She undertook to tow the canal boat six miles from Troy to Albany in broad daylight down a wide river and through piers which were 200 feet apart. The canal boat was helpless, being wholly under the control of the tug. That, in such circumstances, the tug swung the canal boat against the bridge abutment would seem to be sufficient to establish her negligence. It is true that the river was unusually high and that a brisk wind was blowing from the northwest, but these were conditions for the tug to deal with, not the canal boat. The master of the tug was required to know the capacity of his boat in the then existing state of wind and water. If unable to handle six boats safely he should have taken a less number. He knew, or should have known, whether it was prudent to venture out with six boats, and the Allen was justified in relying on his judgment. He knew the character of the wind and that it was liable to increase and shift at that season of the year. It would seem, then, considering the fact that the Julia is one of the smallest and weakest of the river tugs, that it was negligent to attempt to take so large a fleet and, in any event, there was a lack of prudence in making up the tow with two lumber boats, thus offering a broadside of 200 feet by 11 feet to the wind. Mason v. The William Murtaugh, 3 Fed. 404.

Such an accident as this cannot happen without some one being to blame and no one is shown to be at fault here but the tug. She was negligent either in the making up or the navigation of the tow. It is immaterial which. The attempt to show that the collision was the result of a vis major is not sustained by the proof. There was a sudden shifting of the wind, but nothing occurred which prudent navigation might not have anticipated and avoided.

The highest velocity reached by the wind on the afternoon in question was 29 miles per hour, and even assuming that the collision occurred at this time the situation was not one that presented insurmountable obstacles to a prudent navigator had due precautions been taken. The accident was not inevitable. It is safe to say that not a single well-considered case decides that such circumstances as are here proved bring the case within the rule of inevitable accident. Union S. S. Co. v. New York & V. S. S. Co., 24 How. 307, 313. That the problem presented no unusual difficulties is demonstrated by the fact that the tow just ahead of the Julia went down without a mishap.

But it is asserted that the canal boat was at fault and this is urged as a defense by the tug. The libel is by the owner of the cargo. The canal boat is not a party to the action. She had no motive power of her own and depended wholly upon the tug to propel and steer

the fleet. The accident could not have been averted by any use of the canal boat's rudder. But her negligence, conceding it to exist, does not relieve the tug. If the tug were at fault she must respond even though the canal boat was also negligent. The Atlas, 93 U. S. 302; The Troy, 28 Fed. 861.

The libelant is entitled to a decree.