## THE VIOLA.

### HAWKINS v. THE VIOLA.

(District Court, S. D. New York. March 5, 1894.)

SHIPPING—DAMAGES—ACT FEB. 13, 1893 — VESSELS MUTUALLY AT FAULT—LIABILITY FOR CARGO DAMAGE.

Section 3 of the act of February 13, 1893, was not designed to relieve one vessel, at the expense of the other, in cases of collision by mutual fault. The prior rules of apportionment are to be adhered to

as closely as possible. Hence, when damage has occurred by reason of the mutual fault of two vessels, the damages of the two vessels, including personal effects, (which are to be treated as part of the vessel,) are first to be made even. The North Star, 1 Sup. Ct. 41, 106 U. S. 17. Either vessel whose cargo has been damaged cannot be charged, directly or indirectly, with any part of the loss suffered by her own cargo, nor can any offset against the carrying vessel's claim for her own damage be made by the other vessel on account of what the latter must pay for the carrying vessel's cargo damage; but the claim of the cargo of the carrying vessel must be reduced by the amount which would, before the passage of the above act, have been charged against such carrying vessel, or against the moneys payable to her.

Owen, Gray & Sturges, for libelant.
Wing, Shoudy & Putnam, for respondent.

BROWN, District Judge. As stated in the previous decision in this case, (59 Fed. 632,) it seems to me beyond doubt, that congress, by the act of February 13, 1893, (27 Stat. 445,) did not intend to legislate generally concerning the rights or liabilities growing out of collisions, but designed only to deal with the carrying vessel and her own cargo. Upon that view, all the principles and rules of decision previously applicable as to the apportionment of damages in cases of mutual fault should be still followed as closely as possible, and no more changes admitted than the evident intent of the above-named act necessitates. The two fundamental principles, now fully established by the supreme court, (1) that each vessel in fault shall bear an equal portion of the whole loss; and (2) that the innocent cargo owner may recover in full from either vessel, (The Alabama, 92 U. S. 695; The Atlas, 93 U. S. 302,) must still be applied so far as is compatible with the new act; but as these rules have in the past been subject to modifications in particular cases, through the operation of the limited liability acts, so the act of February 13, 1893, imposes further modifications upon both these rules as applied in particular instances. The owner of the carrier vessel being no longer liable for the losses sustained by her own cargo through faults in her navigation, is not bound to admit, in case of her total loss, of any offset in favor of the other vessel for the half of what the latter may be bound to pay on account of the cargo of the former; and this introduces an important modification of the moiety rule as heretofore administered.

On the other hand, there is not the least indication in the act above named that it was the intention of congress to relieve the carrier vessel at the expense of the other vessel in collision cases; that is, to increase the liability of the latter beyond her former liability under like circumstances. Such a result is not only plainly outside the scope of the act, but would be in itself so unjust that the third section of the act ought not to be so construed or applied as to work that result. This will be avoided by the simple and natural construction of section 3 as meaning that the cargo loss, i. e. so much of it as would previously have been charged against the carrier vessel, shall now be borne by the cargo owner. This will leave the liability of the other vessel in collision in every case

precisely as before the act; and such is the construction which, it seems to me, ought to be adopted.

This construction is further recommended by the nature of the different provisions of the act of February 13, 1893, which seem to aim at a sort of adjustment or compromise of opposing interests. The first two sections disable the ship from freeing herself from certain liabilities to her cargo by numerous restrictions which have been heretofore very widely inserted in bills of lading; and in return for these beneficial provisions in favor of the cargo, the cargo seems designed to bear the losses from faulty navigation that would have previously been charged upon the ship. If that is the design of the act, it would be incompatible with it to permit the cargo owner to turn upon the other vessel to recover what the act disables him from recovering from his own, to the increased detriment of the other vessel.

Again, the third section of the act is broad enough literally to exempt the other vessel entirely. It is by construction alone that this result is avoided, i. e. on the view that the act was not designed to affect the relations between the cargo and other vessels. Consistency, therefore, requires that the extent of the liability of the other vessel as fixed by the previous law, should remain unchanged. Until further advised, therefore, the adjustment of the various demands in cases of collision by mutual fault, will be made upon the principle that neither vessel is to be charged with any greater aggregate since this act than she would have been charged before, under like circumstances; that the losses to the two vessels themselves should be first made even, (The North Star, 106 U. S. 17, 1 Sup. Ct. 41,) including personal effects, which are to be treated as part of the vessel; that the carrying vessel cannot be charged for any part of the loss suffered by her own cargo directly, or indirectly, nor can any offset against her claim to damages be made by the other vessel on account of what the latter vessel must pay for that cargo damage; but that the same offset which would have been formerly allowed against the carrying vessel, or against the moneys payable to her, should now be deducted from the claim of her cargo.

This construction, while closely adhering to the apparent intent of the act of 1893, works the least possible change in the fundamental equitable principles of division in cases of mutual fault, as previously applied. Under this construction the cargo owner, whenever the surviving vessel is of sufficient value, will always be paid at least one-half his loss, and sometimes in full; as where the damages to the cargoes on both vessels are equal.

If vessels A. and B. are each damaged $10,000, and only A.'s cargo damaged—say $5,000—B. should pay $2,500 for half the cargo damage; for B. thus bears one-half the whole loss as before. If A.'s loss was $2,000, and her cargo's $4,000; B.'s $8,000, and her cargo's $6,000; then B., after receiving $3,000 from A., should pay A.'s cargo in full, since that would not exceed half the aggregate loss; while A. should pay B.'s cargo but $5,000, as this would reach A.'s limit of half the entire loss; and A. could not offset against B.'s

claim any further payment to B.'s cargo. If the cargo losses had been $5,000 each, each would be paid in full.

If A. and her cargo were each damaged $10,000, while B. and her cargo sustained no damage, A.'s cargo loss might be required to be paid in full by B. before equalizing the losses between the two vessels alone, if such payment could be lawfully offset by B. against A.'s loss of $10,000. But as A. is in no way responsible for any part of her own cargo loss, I do not see how such payment by B. could be availed of as an offset against A.'s claim for half her damage; and since B.'s aggregate liability should not be increased under the act of 1893, the mode indicated in the case of The North Star, supra, must, I think, be followed in all such cases.

The present case is, in principle, like the last illustration. The loss of the libelant's vessel, including freight and personal effects, was about $5,930, and that of her cargo about $1,300; the damage to the Viola about $260, and to her cargo, nothing. The libelant's vessel and cargo were a total loss. The Viola has been sold, and her proceeds, in the registry of the court, less the marshal's expenses, amount to about $3,440. Upon the adjustment of the costs and marshal's fees, virtually paid by the defendant, a balance of $111.74 against the libelant reduces his claim on his vessel's account with interest to about $2,723, against the Viola to equalize the loss between the two vessels. As no part of the cargo loss can be offset against the libelant, the cargo must bear one-half of that loss itself, and the defendants pay the other half, which will make up the amount which the defendants would previously have been called on to pay. After paying those amounts, the surplus of the proceeds of sale will be about $70, which will, therefore, belong to the defendant.

Decree accordingly.